IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 6, 2024

## STATE OF TENNESSEE v. KEVIN SCOTT PENDLETON

**Appeal from the Circuit Court for Tipton County**
**No. 10840     A. Blake Neill, Judge**

_____

**No. W2023-00697-CCA-R3-CD**

_____

A Tipton County jury found the defendant, Kevin Scott Pendleton, guilty of possession of a firearm by a convicted felon for which he received a sentence of ten years in confinement. On appeal, the defendant contends that the evidence presented at trial was insufficient to support his conviction. Following our review, we affirm the defendant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and KYLE A. HIXON, JJ., joined.

Bryan Huffman, (on appeal), and Terry Dycus, Covington, Tennessee (at trial), for the appellant, Kevin Scott Pendleton.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Mark E. Davidson, District Attorney General; and Jason Poyner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

The defendant was indicted by the Tipton County Grand Jury for two counts of violation of sex offender registration requirements, violation of the sex offender registry, possession of a firearm by a convicted felon – violent felony, introduction of contraband into a penal institution, and aggravated assault. The trial court severed the counts and the defendant went to trial for a single count of possession of a firearm by a convicted felon – violent felony.

At trial, Detective Jay Rodriguez with the Tipton County Sheriff's Office testified that on January 24, 2022, he arrived at the home of Pamela Dengel in order to execute an arrest warrant for her son, the defendant, on an unrelated matter. When Det. Rodriguez arrived, he spoke with Ms. Dengel concerning the whereabouts of the defendant. She stated that the he may be in the trailer located next to her home. The trailer, owned by Ms. Dengel, was generally uninhabitable, but she stated that she allowed the defendant to stay there when the weather was cold. According to Ms. Dengel, there were no other residents of the trailer, although some friends of the defendant did "come in and out."

Det. Rodriguez proceeded to the trailer and knocked on the front door. He testified that he could hear someone inside. A few moments later, the defendant attempted to exit the trailer through the back door, but he was met by another officer. The defendant was arrested and escorted to the Tipton County Jail to be processed.

Later that same day, Det. Rodriguez became aware that after arriving at the jail, the defendant made a telephone call to Ms. Dengel. A recording of the call was played for the jury. During the call, the defendant asked his mother if anyone was with her, to which she replied, "no." The defendant asked if anyone was in the trailer, and she replied, "I don't think so." The defendant warned his mother that she needed to keep her doors locked during the day. The defendant then said, "I left a thing over there – you understand what I mean?" The defendant described that there was a couch near the front door of the trailer and, "my thing is in the armrest." He described the armrest as "ripped open." The defendant then warned his mother to be "really really careful" when she put her hand into the couch.

After listening to the call, Det. Rodriguez, based upon his experience, suspected that the item in the armrest was a firearm. When he returned to Ms. Dengel's property, Det. Rodriguez advised Ms. Dengel he had listened to the conversation and asked her to accompany him to search the armrest. Ms. Dengel testified she was sick with COVID-19 and ultimately did not have the strength to ascend the brick steps into the trailer; therefore, Ms. Dengel gave Det. Rodriguez permission to enter the trailer alone to search the armrest.

Once inside the trailer, Det. Rodriguez went to the couch near the front door and observed a large cut in the armrest's fabric, just as the defendant had described in the telephone call. When Det. Rodriguez looked inside the armrest, he saw what appeared to be a firearm and removed it from the couch. The firearm was later identified as a Cobra FS380, a semi-automatic pistol. Det. Rodriguez also discovered a live round in the pistol's chamber.

On January 25, 2022, the defendant was brought from the Tipton County Jail to meet with Det. Rodriguez. After being questioned, the defendant was escorted back to jail by Officer Monte Temple, a corrections officer for the Tipton County Sheriff's Office. Officer Temple testified that while walking the defendant back to his cell, the defendant stated, "F**k, they found my gun. I'm f**ked now; ain't I, Temple?" Officer Temple also testified that once the defendant was back in his cell, he overheard the defendant tell his cellmates, "F**k, they found my pistol. I don't know what to do now."

The parties stipulated the defendant was previously convicted of a violent felony.

The defendant testified on his own behalf presenting evidence that significantly differed from the evidence presented by the State. The defendant denied making any statements to Officer Temple or his cellmates concerning a firearm and accused Officer Temple of fabricating the statements as a result of "bad blood" between them. The defendant testified that he was unaware a firearm was inside the armrest and that it did not belong to him. He claimed he stayed in the trailer infrequently and did not reside there. He explained the phone call to his mother was meant to simply warn her about other people coming to the trailer to retrieve their belongings. When confronted on cross-examination about referring to the item in the armrest as "my thing" in the telephone call, the defendant claimed he was referring to drug paraphernalia.

Following the conclusion of proof, the jury convicted the defendant of possession of a firearm by a convicted felon. After a sentencing hearing, the trial court imposed a Range II sentence of ten years in confinement. The defendant filed a motion for a new trial, arguing that the evidence was insufficient to support his conviction. The trial court denied the motion, and this timely appeal followed.

### Analysis

On appeal, the defendant argues that the evidence presented at trial was insufficient to support his conviction for possession of a firearm by a convicted felon. The State contends the evidence at trial was sufficient for the jury to find the defendant constructively possessed the firearm. Upon our review of the record and applicable law, we agree with the State and affirm the defendant's conviction.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact

- 3 -

of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated section 39-17-1307(b) makes it a Class B felony for any person who has previously been convicted of a felony involving the use of or attempted use of force, violence, or a deadly weapon to subsequently unlawfully possess a firearm. *Id.* § 39-17-1307(b)(1)(A) and (b)(2).

"Possession may be actual or constructive." *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citing *State v. Shaw,* 37 S.W.3d 900, 903 (Tenn. 2001)). Actual possession "refers to physical control over an item." *State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014). On the other hand, constructive possession is established when a person has "'the power and intention at a given time to exercise dominion and control over [an object] either directly or indirectly or through others.'" *Shaw*, 37 S.W.3d at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). Constructive possession depends on the totality of the circumstances in each case and may be established through circumstantial evidence. *Robinson,* 400 S.W.3d at 534.

The defendant argues there was insufficient evidence establishing he "possessed" the firearm because other people came and went from the trailer and because he was unaware a firearm was in the couch. However, when viewed in the light most favorable to

the State, the proof was sufficient for the jury to determine the defendant constructively possessed the firearm. When Det. Rodriguez searched the armrest, he found a semi-automatic pistol. Ms. Dengel's statements to Det. Rodriguez indicated that she allowed the defendant to reside in the trailer on occasion and he was found by officers emerging from the trailer earlier that day. The defendant's own statements in the telephone call referred to the object in the armrest as his "thing," and described its exact location. Lastly, the defendant made statements to both Officer Temple and his cellmates that "my gun" had been discovered. Therefore, the evidence was sufficient to sustain the jury's determination that the defendant constructively possessed the firearm to support his conviction. *See State v. Atwood*, No. M2021-00690-CCA-R3-CD, 2022 WL 554384, at \*3 (Tenn. Crim. App. Feb. 24, 2022) (concluding there was sufficient proof of constructive possession where the weapon was found in the defendant's trailer); *see also State v. Ford*, No. W2015-02407-CCA-R3-CD, 2017 WL 838483, at \*4 (Tenn. Crim. App. Mar. 3, 2017) (concluding there was sufficient proof of constructive possession where the weapon was found in the defendant's bedroom and would have been easily accessible to him). Accordingly, we affirm the jury's verdict.

## *Conclusion*

For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
J. ROSS DYER, JUDGE